IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

VICKIE SANDERS,

    Plaintiff,

v.

    CIVIL ACTION NO.

    99-AR-0855-S

MARCUS CABLE, INC.,

    Defendant.

ENTERED
MAY 11 2000

## MEMORANDUM OPINION

Presently before the court is a motion for summary judgment filed by defendant, Marcus Cable Operating Company, L.L.C. ("Marcus"). The motion seeks judgment as a matter of law on claimed violations of 29 U.S.C. §§ 621, *et seq.*, the Age Discrimination in Employment Act ("ADEA"). For the reasons set forth herein, the motion is due to be granted.

### Pertinent Facts

Plaintiff, Vickie Sanders ("Sanders"), began working for Mountain Brook/Shelby Cable ("MBSC") as a Customer Service Representative ("CSR") in 1996. Sanders's immediate supervisor, Vicki Taylor-Howard ("Taylor-Howard"), testified that she was happy with Sanders's performance. During her employment at MBSC, Sanders

1

received several awards for sales. Selling products such as HBO to customers on the phone was part of the responsibilities of the position of CSR.

In late 1997, Marcus purchased MBSC. Sanders was informed of this change, and she was provided a packet of information including a Marcus employee handbook, an employment application, insurance forms, etc. Certain employees who were employed by MBSC during this transition period testified that because they were presented with this package of material from Marcus, they were under the impression that all the MBSC employees were going to be hired by Marcus. There was no official announcement to that effect.

The interview process set up by Marcus involved a first and second interview. The purpose of the first interview was to confirm general qualifications for the job, and all of the CSRs employed by MBSC passed the first interview. The purpose of the second interview was to accomplish a more focused analysis of employee qualifications. During this second interview Sanders was asked a number of questions pertinent to her qualifications for the CSR position. While responding to these questions, Sanders indicated, among other things, that she did not like dealing with irate customers, and that she did not like selling.

Sanders was not offered a job by Marcus. Sanders brings suit

2

based on her belief that she was not offered a position because of her age, 43. Marcus responds by claiming that Sanders was not offered a position because she expressed dislike for selling and for dealing with irate customers. Sanders does not dispute the fact that she expressed dislike for selling and for dealing with irate customers.

### Discussion

#### ADEA Claim

Claimed violations of the ADEA are analyzed under the *McDonnell Douglas* burden shifting analysis. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817 (1973); *Damon v. Fleming Supermarkets Of Florida, Inc.*, 196 F.3d 1354, 1358 (11th Cir. 1999). Sanders must first establish a *prima facie* case of discrimination. If Sanders can establish a *prima facie* case, Marcus may rebut that case with presentation of legitimate, non-discriminatory reasons for its actions. In response, Sanders must show that Marcus's stated reasons for failing to hire her are a pretext for intentional discrimination based on her age.

For the purposes of this memorandum opinion, the court will accept that Sanders has established her *prima facie* case. In response, Marcus has offered a legitimate, non-discriminatory

explanation for its decision not to hire Sanders; namely, that Sanders was not offered a job as a CSR because she stated that she did not like selling and that she did not like dealing with irate customers.

Sanders argues that Marcus's explanation is a pretext for age discrimination. In support of this argument, Sanders offers a number of arguments, four of which will be discussed. Sanders makes the following claims:

### 1) Marcus hired other, younger employees who also did not like to sell and who also did not like disagreeable customers.

The court agrees with Sanders that if such disparate treatment could be shown, it could constitute circumstantial evidence of pretext. Unfortunately for Sanders, however, the record does not support her contention as to disparate treatment. In attempting to show disparate treatment, Sanders first points to Taylor-Howard, who was 39 years old, and argues that Taylor-Howard also stated in her interview that she did not "prefer" to sell[1], and second, that

---

[1] Sanders insists that when one states that one does not "prefer" to sell, such a statement is, in all cases, identical to stating that one does not "like" to sell. The court agrees that this would probably ordinarily be the case. However, in this case the court is not sure. Taylor-Howard stated in her deposition that there were rumors going around that Marcus might be seeking to place CSRs in marketing positions. Taylor-Howard testified that when she said she did not "prefer" to sell, her point was that she did not want a _marketing_ job. It seems entirely possible to the court that the interviewer might well have understood the meaning that Taylor-Howard actually intended.  This is the distinction that matters here; not whether, in the abstract, the words "like" and "prefer" usually mean the same thing.

4

Taylor-Howard **would have** stated that she did not like dealing with irate customers **if she had been asked**. Sanders acknowledges that in her own interview she stated **both** that she did not like to sell and that she did not like dealing with irate customers. Even if Taylor-Howard did mention that she did not "prefer" to sell, there is no indication that Taylor-Howard also stated in her interview that she was averse to dealing with irate customers. In fact, Taylor-Howard testified that she did not remember making such statements.[2] This difference is a meaningful distinction that leaves no room for the inference that Sanders's age was the "real" reason she was not hired.

The other comparators offered by Sanders are even less helpful to her because none of them even arguably made **both** statements during their interview; namely, that they did not like to sell and that they did not like dealing with irate customers. The court has not found any proof that there were younger persons who were hired by Marcus after having made both of these statements in their interviews.

---

[2] Sanders appears to argue that because the interviewer acknowledged that she discussed "irate customers" with all applicants, and because Taylor-Howard testified that she "would have" stated that she did not like dealing with irate customers if asked, that Taylor-Howard must, therefore, like Sanders, have told the interviewer that she did not like dealing with irate customers. This assertion is too speculative to form the basis of employer liability.

### 2) **Pretext is shown by the way the decision was made not to hire Sanders.**

To make this argument, Sanders first explains that the handwritten evaluation notes from Interviewer #1 indicate that Sanders tried hard to deal with irate customers and make them happy. Sanders argues that Interviewer #2 held against Sanders her dislike for irate customers notwithstanding the positive comments made in the notes of the Interviewer #1 about Sanders's willingness to work extra hard to please irate customers. Sanders concludes that this clearly indicates that the Interviewer #2 had a different agenda; namely, that Interviewer #2 failed to hire Sanders because of her age, not because of her dislike for irate customers.

The court finds that this argument is too speculative to be of help to Sanders. Even if Sanders can somehow argue that Interviewer #2 "had it in" for her, there is no basis for concluding that it was Sanders's **age** that caused this negative predisposition. The fact that age discrimination is "the only explanation [Sanders] could come up with that made any sense" is not a basis for allowing Sanders to make the same argument to a jury without any direct evidence of age bias by the decision maker.

6

3) **The fact that the date of birth of each prospective hire was listed on the evaluation notes of the interviewers clearly proves that age was taken into consideration in the hiring decision.**

The court finds that there is no evidence in the record to indicate that the date-of-birth entries were part of the decision making process. Sanders claims in her brief that Interviewer #1 testified during the deposition that the date-of-birth entries were placed on the evaluation forms sometime between the first and second interviews. Sanders speculates that they must, therefore, have been considered as part of the decision-making process. The court read the deposition of Interviewer #1 and finds that she does not testify as Sanders claims. The testimony of Interviewer #1 is that certain handwritten notes of evaluation were placed on the interview forms after the first interview, but she was not sure when. More significantly, however, Interviewer #1 testified that the **dates of birth** in particular were **only** placed on the evaluation forms much later, as part of the information gathering process in response to Sanders's EEOC charge of age discrimination. In addition, Interviewer #1 also stated several times that Interviewer #2, the decision-maker "never saw this document [that included any date of birth entries]."

7

Sanders argues that because the court should view the facts at this stage in the light most favorable to the plaintiff, that the court should agree with Sanders's interpretation of the testimony of Interviewer #1. Sanders's interpretation of this testimony appears simply to be that the deponent is lying. The court cannot consider speculation of this nature, even at the summary judgment stage. The court can only view the **evidence** in the light most favorable to the plaintiff. Here, there are no **facts** to support Sanders's position. There is no evidence of any kind, aside from Sanders's speculation, to indicate that the dates of birth of the applicants were considered in the hiring process.

### 4) The only CSRs who were not offered a job by Marcus were the two who were over 40 years old.

There were, at the most, 10 CSRs from MBSC who sought positions with Marcus. Of these, two were not offered positions. These two were the ones who were over 40. From these facts Sanders asks the court to conclude that there is sufficient statistical evidence to indicate that Marcus is biased against CSRs over 40 because of their age. The court finds that it cannot reach that conclusion from such a small sample size. This is especially true, where, as here, Marcus in response offers legitimate, non-discriminatory reasons for failing to offer a position to Sanders.

Sanders claims that *Damon v. Fleming Supermarkets of Florida, Inc.*, 196 F.3d 1354 (11th Cir. 1999) stands for the proposition that a sample of this size is sufficient from which to infer a pattern of intentional discrimination. But *Damon* makes no mention at all of statistical evidence and does not rely on statistics in any way to reach its holding. In *Damon* there was abundant direct and circumstantial evidence of age discrimination. As it happens, this evidence of discrimination was also bolstered by a pattern of discrimination in which five out of seven adverse employment actions were taken against older workers within a one year period. While those numbers are part of the evidence in the case, it would not be fair to characterize *Damon* as a case which sets any standards for the probative value of statistical evidence, or the size of a sample needed to be deemed significant. Accordingly, the court cannot see how *Damon* is helpful to Sanders here.

This court finds more persuasive the Eleventh Circuit in *Watkins v. Sverdrup Technology, Inc.*, 153 F.3d 1308 (11th Cir. 1998), where that court held that statistics are not relevant when the plaintiff concedes that the nondiscriminatory explanation has a basis in fact. The court held at footnote 15:

9

> Of course, even statistically significant evidence can fail to create a jury question of pretext. See *Benson*, 113 F.3d at 1209-10 (plaintiff-Dollar failed to raise jury question that employer's proffered explanation that Dollar refused to learn a new computer program was a pretext for age discrimination because Dollar conceded that he expressed such disinterest, even though Dollar presented "statistically significant" evidence that employer terminated [older workers at higher rates than younger workers].

*Watkins*, 153 F.3d at 1315, n.15.

Here, even if Sanders's very small sample could be considered statistically significant, which the court doubts, it would still not help her. Sanders concedes that she stated in her interview that she did not like to sell and that she did not like dealing with irate customers. Sanders, like Dollar above, admits that she made the statements that formed the basis of Marcus's decision not to hire her. Whatever the statistics may be with respect to older and younger employees, in Sanders individual case they are irrelevant because Marcus's nondiscriminatory explanation for its decision has a basis **in fact**. No employer must hire a statistically balanced staff **per se.** An employer is only required to hire fairly from a pool of qualified candidates. Marcus had a perfect right to conclude that an applicant expressing the reluctances stated by Sanders was not the candidate it wanted to hire, regardless of her age or the age of any other.

## **Conclusion**

While the court has not addressed every point made by Sanders in her brief, the court has discussed the points that seemed to have some possible merit. The court can understand that Sanders was surprised and possibly even hurt and offended that she was not offered a position. From the record Marcus may very well have missed out on a good CSR when it failed to hire Sanders. Notwithstanding this feeling, neither a court nor a jury can substitute its judgment for a nondiscriminatory decision by an employer, no matter how unwise. After applying the *McDonnell-Douglas* test to this ADEA cause of action, Sanders simply cannot make her case. There is no evidence that Marcus's nondiscriminatory explanation for its decision is a pretext for age discrimination.

Based on the reasons set forth above, defendants' motion for summary judgment is due to be granted. An appropriate order will be separately entered.

DONE this 11 day of May, 2000.

WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE